1    PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY

2    Name   **GRAY,**     **SAM,**     **D.**
          (Last)       (First)       (Initial)

3

4    Prisoner Number   **V-59334**

    Institutional Address   **P.O. BOX 290066, FC6/206**

5               **REPRESA, CALIF. 95671-0066**

6

7 <center>UNITED STATES DISTRICT COURT<br>NORTHERN DISTRICT OF CALIFORNIA</center>

8    SAM DONTE GRAY
    (Enter the full name of plaintiff in this action.)     **CV**

9                 VS.     **08** Case No.   **2259**

10    J. L. WALKER (WARDEN),     (To be provided by the clerk of court)

11                        **PETITION FOR A WRIT**
                        **OF HABEAS CORPUS**

12                            *WHA*

13

14    (Enter the full name of respondent(s) or jailor in this action)    E-filing    *(PR)*

15

16 <center>Read Comments Carefully Before Filling In</center>

17 When and Where to File

18      You should file in the Northern District if you were convicted and sentenced in one of these

19 counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20 San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21 this district if you are challenging the manner in which your sentence is being executed, such as loss of

22 good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23      If you are challenging your conviction or sentence and you were not convicted and sentenced in

24 one of the above-named fifteen counties, your petition will likely be transferred to the United States

25 District Court for the district in which the state court that convicted and sentenced you is located. If

26 you are challenging the execution of your sentence and you are not in prison in one of these counties,

27 your petition will likely be transferred to the district court for the district that includes the institution

28 where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS      - 1 -

1    <u>Who to Name as Respondent</u>

2        You must name the person in whose actual custody you are. This usually means the Warden or

3    jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4    you are imprisoned or by whom you were convicted and sentenced. These are not proper

5    respondents.

6        If you are not presently in custody pursuant to the state judgment against which you seek relief

7    but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8    custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9    was entered.

10    <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11        1. What sentence are you challenging in this petition?

12               (a)     Name and location of court that imposed sentence (for example; Alameda

13                    County Superior Court, Oakland):

14                  ALAMEDA COUNTY SUPERIOR COURT     OAKLAND, CALIFORNIA

15                    Court                      Location

16               (b)     Case number, if known __144911__

17               (c)     Date and terms of sentence DECEMBER 1, 2004

18               (d)     Are you now in custody serving this term? (Custody means being in jail, on

19                    parole or probation, etc.)        Yes __XX__    No _____

20                    Where?

21                    Name of Institution: _CSP-NEW FOLSOM, REPRESA, CALIF._

22                    Address: _P.O. BOX 290066, REPRESA, CALIF. 95671-0066_

23        2. For what crime were you given this sentence? (If your petition challenges a sentence for

24    more than one crime, list each crime separately using Penal Code numbers if known. If you are

25    challenging more than one sentence, you should file a different petition for each sentence.)

26    MURDER, PENAL CODE SEC. 187; AND USE OF A FIREARM PENAL CODE SEC.

27    _12022.53, subd.(d)_

28

   PET. FOR WRIT OF HAB. CORPUS     - 2 -

1    3. Did you have any of the following?

2        Arraignment:                              Yes XX      No _____

3        Preliminary Hearing:                Yes XX      No _____

4        Motion to Suppress:               Yes XX      No _____

5    4. How did you plead?

6        Guilty _____    Not Guilty XX    Nolo Contendere _____

7        Any other plea (specify) _____

8    5. If you went to trial, what kind of trial did you have?

9        Jury XX    Judge alone_____    Judge alone on a transcript _____

10    6. Did you testify at your trial?            Yes      No

11    7. Did you have an attorney at the following proceedings:

12        (a)    Arraignment                  Yes XX      No _____

13        (b)    Preliminary hearing         Yes XX      No _____

14        (c)    Time of plea                Yes XX      No _____

15        (d)    Trial                        Yes XX      No _____

16        (e)    Sentencing                 Yes XX      No _____

17        (f)    Appeal                     Yes XX      No _____

18        (g)    Other post-conviction proceeding    Yes _____    No XX

19    8. Did you appeal your conviction?           Yes XX      No _____

20        (a)    If you did, to what court(s) did you appeal?

21            Court of Appeal             Yes XX      No _____

22            Year: 2005      Result: AFFIRMED

23            Supreme Court of California      Yes XX      No _____

24            Year: 2006      Result: DENIED

25            Any other court             Yes XX      No _____

26            Year: 2007      Result: DENIED

27

28        (b)    If you appealed, were the grounds the same as those that you are raising in this

PET. FOR WRIT OF HAB. CORPUS    - 3 -

1    petition?                                      Yes XX    No_____

2    (c)    Was there an opinion?                   Yes XX    No_____

3    (d)    Did you seek permission to file a late appeal under Rule 31(a)?

4                                                    Yes _____    No_____

5    If you did, give the name of the court and the result:

6    CALIFORNIA COURT OF APPEAL, FIRST APPELLATE DISTRICT,

7    DIVISION NO. THREE,    RESULTS:    AFFIRMED

8    9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9    this conviction in any court, state or federal?          Yes XX    No_____

10    [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11    challenged the same conviction you are challenging now and if that petition was denied or dismissed

12    with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13    for an order authorizing the district court to consider this petition. You may not file a second or

14    subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15    U.S.C. §§ 2244(b).]

16    (a)    If you sought relief in any proceeding other than an appeal, answer the following

17    questions for each proceeding. Attach extra paper if you need more space.

18    I.    Name of Court: SUPREME COURT OF CALIFORNIA

19    Type of Proceeding: WRIT OF HABEAS CORPUS

20    Grounds raised (Be brief but specific):

21    a. BRADY ISSUE WHICH ALSO EFFECTED RIGHT TO COUNSEL, CON-

22    b. FRONTATION, AND FAIR TRIAL

23    c.

24    d.

25    Result: DENIED                        Date of Result: Jan. 30, 08

26    II.    Name of Court:

27    Type of Proceeding:

28    Grounds raised (Be brief but specific):

1               a._____

2               b._____

3               c._____

4               d._____

5               Result:_____ _____ ____ _____Date of Result:_____

6        III.    Name of Court:_____

7               Type of Proceeding:_____

8               Grounds raised (Be brief but specific):

9               a._____

10             b._____

11             c._____

12             d._____

13             Result:_____Date of Result:_____

14        IV.    Name of Court:_____

15               Type of Proceeding:_____

16               Grounds raised (Be brief but specific):

17               a._____

18             b._____

19             c._____

20             d._____

21             Result:_____Date of Result:_____

22     (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                            Yes_____  No_XX_

24            Name and location of court:_____

25   **B. GROUNDS FOR RELIEF**

26      State briefly every reason that you believe you are being confined unlawfully. Give facts to

27  support each claim. For example, what legal right or privilege were you denied? What happened?

28  Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS     - 5 -

1    need more space. Answer the same questions for each claim.

2        [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3    petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4    499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5        Claim One:  THE PROSECUTOR COMMITTED "BRADY" ERROR WHERE HE WITHHELD

6    IMPEACHMENT MATERIALS WHICH WERE CRUCIAL TO PETITIONER'S DEFENSE
     VIOLATING HIS FIFTH, SIXTH, AND FOURTEENTH AMENDMENT RIGHTS
7    Supporting Facts:  THE FACTS IN SUPPORT OF PETITIONER'S CLAIMS ARE FAR

8    TOO LENGTHY TO FIT IN THIS SPACE PROVIDED, THEREFORE, PETITIONER

9    HAS  ADDED  ADDITIONAL  PAGES  EXPLAINING  HIS  CLAIMS  AND  THE

10   SUPPORTING FACTS. (SEE ADDITIONS TO PAGE SIX.)

11       Claim Two:  THE PROSECUTOR IMPROPERLY VOUCHED FOR THE CREDIBILITY OF

12   ITS OWN EIVDENCE, VIOLATING PETITIONER'S SIXTH AMEND. RIGHT TO CON-
     FRONTATION
13   Supporting Facts:  THE FACTS IN SUPPORT OF PETITIONER'S CLAIMS ARE FAR

14   TOO LENGTHY TO FIT IN THIS SPACE PROVIDED, THEREFORE, PETITIONER

15   HAS ADDED ADDITIONAL PAGES EXPLAINING HIS CLAIMS AND THE SUPPORTING

16   FACTS. (SEE ADDITIONS TO PAGE SIX.)

17       Claim Three: THE  PROSECUTOR  COMMITTED  PREJUDICIAL  ERROR  IN  HIS

18   ARGUMENTS TO THE JURY, VIOLATING PETITIONER'S FIFTH, AND FOURTEENTH
     AMEND, RIGHTS
19   Supporting Facts:  THE FACTS IN SUPPORT OF PETITIONER'S CLAIMS ARE FAR

20   TOO LENGTHY TO FIT IN THIS SPACE PROVIDED, THEREFORE, PETITIONER

21   HAS ADDED ADDITIONAL PAGES EXPLAINING HIS CLAIMS AND THE SUPPORTING

22   FACTS. (SEE ADDITIONS TO PAGE SIX.)

23       If any of these grounds was not previously presented to any other court, state briefly which

24   grounds were not presented and why:

25   _____

26   _____

27   _____

28   _____

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  **FOUR:** ~~Claim One:~~ THE "CUMULATIVE" EFFECT OF THE ERROR AT TRIAL DEPRIVED PET-

6  ITIONER OF A "FAIR" TRIAL WITHIN THE MEANING OF THE FIFTH, SIXTH,
   & FOURTEENTH AMEND.

7  Supporting Facts: THE FACTS IN SUPPORT OF PETITIONER'S CLAIMS ARE FAR TOO

8  LENGTHY TO FIT IN THE SPACE PROVIDED, THEREFORE, PETITIONER HAS

9  ADDED ADDITIONAL PAGES EXPLAINING HIS CLAIMS AND THE SUPPORTING

10  FACTS. (SEE ADDITIONS TO PAGE SIX.)

11  **FIVE:** ~~Claim Two:~~ THE BRADY VIOLATION AT TRIAL, ALSO DEPRIVED PETITIONER OF HIS

12  RIGHTS TO CONFRONTATION, A FUNDAMENTALLY FAIR TRIAL, AND RIGHT TO
    EFFECTIVE ASSISTANCE OF COUNSEL

13  Supporting Facts: THE FACTS IN SUPPORT OF PETITIONER'S CLAIMS ARE FAR TOO

14  LENGTHY TO FIT IN THE SPACE PROVIDED, THEREFORE, PETITIONER HAS

15  ADDED ADDITIONAL PAGES EXPLAINING HAS CLAIMS AND THE SUPPORTING

16  FACTS. (SEE ADDITIONS TO PAGE SIX.)

17  ~~Claim Three:~~

18

19  Supporting Facts:

20

21

22

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS

6-A

1    TIMELINESS OF FEDERAL PETITION

2        The instant petition is governed by limitations established by the

3    Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter AEDPA), or 28

4    U.S.C. §2254(d)(1). AEDPA imposes a one-year statute of limitation on

5    applications for writ of habeas corpus by a person in custody pursuant to a

6    judgment of a state court. The limitations period begins to run from "the date

7    on which the judgment became final or by the conclusion of direct review and/or

8    the expiration of time for seeking such review." (28 U.S.C. §2254(d)(1)(A).)

9        Additionally, that time during which a properly filed application for state

10   post-conviction relief is pending -- is not counted against the one-year

11   limitations period. (28 U.S.C. §2254(d)(2).) Lastly, the Ninth Circuit had

12   determined that the conclusion and finalization of direct review includes the

13   ninty-day time period in which to file a petition for writ of certiorari to the

14   U.S. Supreme Court. (See Brown v. Roe, 188 F.3d 1157, 1158-59 (9th Cir. 1999)).

15       Taking into account the various time constraints mentioned herein above.

16   the instant habeas petition is be submitted well within the statute of

17   limitations period. Following direct review, petitioner subsequently filed a

18   state habeas petition which was recently denied, on or about Jan. 30, 2008.

19   Immediately after the Jan. 30, denial, petitioner diligently sought to filed the

20   instant habeas petition, however, prison lockdowns impeded his progress to some

21   degree. (See Exhs 1 through 4 attached herewith.)

22       Petitioner has also sent, prior to the filing of his original habeas

23   petition, a five (5) dollar filing fee. As a "Pro Se" litigant, he did not

24   realize that the fee was to be paid along with the filing of his habeas

25   petition. Hence, the court has received, in advance, petitioner's filing fee.

26   ///

27   ///

28   ///                                 6-13

1

STATEMENT OF THE FACTS

2    After years of Kenneth Rankin taunting, beating, and threatening him,
3 sixteen year old Sam Gray shot Rankin, believing that if he did not, Rankin
4 would shoot him.  Sam met Rankin in 2001 at camp Sweeney, a juvenile detention
5 facility. (RT 532.) Upon meeting Sam, Rankin asked him where he was from. Sam
6 said from Milton, an area in Okaland.  Rankin immediately left and came back
7 with a group of peers from Ghost Town, a rival area to Milton, and forced Sam to
8 fight them, one by one. (RT 532-534.)  After Sam fought Rankin's "homeboy,"
9 Rankin, who was physically much larger than Sam, assaulted him. (RT 282.)

10    Rankin beat Sam severely and then told him that if he ever saw him on the
11 street he would kill him. (RT 534, 536, 537.) Sam described for jurors how
12 Rankin tried to "stomp him out," by punching, kicking, and strangling him
13 until Sam was unconscious. (RT 536.)  From that moment on, Sam feared Rankin
14 and believed he would carry out his threat to kill him if he saw him when they
15 returned to the streets. (RT 551.)

16    Several months later, on the street, he met Rankin, who shot him an
17 aggressive look and said "what's up" in such a way that Sam understood he wanted
18 to fight, pick up where they left off at Camp Sweeney.  Sam walked away. (RT
19 568.)  In August, 2002, Sam began selling cocaine for Rankin. (RT 569, 570.
20 574.)  In September, an ounce Rankin had "fronted" to Sam was stolen. (RT 84,
21 572, 579, 584.)  Rankin gave Sam two days to pay for the drugs, and said
22 otherwise he would kill him. (RT 585.)

23    That night Rankin showed up at Sam's grandmother's house, where Sam lived.
24 He displayed a snub nose pistol, asked for Sam, and stated to Sam's grandmother
25 "I am gonna kill that nigger." (RT 588, 726.)  When Sam got home, his
26 grandmother told him what had happened.  Sam believed what Rankin said. (RT
27 588.)

28    Unable o find the money to pay Rankin, Sam went to a local dice game. (RT

6-C

1   592.)   Rankin showed up at the game. (RT 595.)   He slapped Sam and told his
2   friends at the dice game to "keep the nigger there" so he could retrieve a gun
3   to shoot Sam. (RT 605.)   Afraid Rankin would shoot him on the spot (RT 614), Sam
4   pulled his hood over his face.   Right after passing the two, he turned and shot
5   Rankin. (RT 610.)   Rankin fell and Sam ran. (RT 116, 118, 612.)

6        About two months later a youth named Pardain called juvenile counselor
7   Jeannise Gonzalez, claiming that he had met Sam in a parking lot and that Sam
8   had told him "I was the mother fucker that shot that nigger," meaning Rankin.
9   (RT 362, 526.)

10       On November 13, 2002, Oakland police responded to a report of a young man
11  armed with a gun. (RT 489.)   Responding, an officer saw Sam. (RT 489.)   The
12  officer chased Sam to a roof top where he was arrested. (RT 491.) Along the path
13  of the chase, the officer found a pistol. (RT 492.)   The gun was later shown to
14  have fired the slug that killed Rankin. (RT 417.)      Sam was arrested and
15  interrogated for seventeen hours. (RT 472.)   Ultimately, he admitted he had shot
16  Rankin. (RT 466; see Exhs. 15, 15-A, 16, 16-A, 17, & 17-A [tape recorded
17  confession and typed transcript].)

18       At trial, Sam testified that he shot Rankin only because he believed there
19  was no other way he could prevent Rankin from shooting him. (RT 605.)   Sam's
20  father had been shot to death when Sam was three (RT 538, 736), his two cousins
21  had also been gunned down on the streets of Oakland (RT 539, 737), he and his
22  mother had been carjacked (RT 536, 741), a youth had once shot at him and his
23  mother, he had to dodge bullets from an Uzi at a burger joint (RT 544).   Sam
24  came to believe that he easily be the next one to be gunned down. (RT 622.)   He
25  lost hope and dropped out of school. (RT 542.)

26       Sam testified that, from the first time Rankin threatened his life at Camp
27  Sweeney, he believed Rankin was resolved to kill him. (RT 588), and his fear
28  became more acute when Rankin threatened him over the drug debt, threatened his

6-1

1   life to his grandmother (RT 588), and threatened him at the dice game the night
2   of the shooting (RT 598, 604, 694, 699).

3

4                              STANDARD OF REVIEW

5       Under the applications provision of AEDPA, a federal court cannot grant
6   relief on any claim adjudiciated on the merits in state court unless
7   adjudication of the claims "[r]esulted in a decision that was 'contrary to,' or
8   an 'unreasonable application' of clearly established federal law as determined
9   by the U.S. Supreme Court; or unless the state court findings resulted in a
10  decision that was based on an 'unreasonable determination' of the facts in light
11  of the evidence presented in the state court proceedings.' (28 U.S.C.
12  §2254(d)(1)(2); Williams v. Taylor, 529 U.S. 362, 409 (2000); and Price v.
13  Vincent, 538 U.S. 634, 638-39 (2003)).

14      Here, in the case at bench, petitioner contends that the state courts
15  holdings, in grounds I through V, were both "contrary to," and "unreasonable
16  determination" of the facts in light of the evidence presented at his trial."
17  He further contends that in an "evidenctiary hearing" he can make the required
18  showing to demonstrate that he is, in fact, entitled to relief on each of the
19  claims raised herein. (Caro v. Calderon, 165 F.3d 1223 (9th Cir. 1999)).   See
20  also (28 U.S.C. §2254(e); and Jones v Wood, 114 F.3d (9th Cir. 1997)).

21

22                         SUPPORTING FACTS TO GROUND I:

23      The prosecutor withheld critical portions of Baskin's testimony.  Baskin,
24  according to the prosecution and police, was a reliable informant, thus, the
25  prosecutor felt that he had no duty to disclose those portions of Baskin's
26  interview with Sgt. Nolan of the Oakland police, as well as statements Baskin
27  made later in a conversation with the prosecutor. (RT 429, 433, 435-36; and
28  264.)

                                    6 - E

1   The prosecution at trial argued, in response to a defense motion regarding
2   withholding of Brady materials and requested sanctions, that it had no duty to
3   turn over material that was not recorded by Sgt. Nolan, or the statements
4   Baskin made in recorded conversations bewteen him and the prosecutor. (RT 264.)

5   The court of appeals in direct review, wrongly sided with the trial court
6   denial of petitioner's claim and affirmed petitioner's conviction.    It further
7   found that the defense made no claim that the omitted evidence was exculpatory.
8   (Opn. at p.5.)

9   Petitioner contends that the appropriate inquiry under Brady is the "effect
10  the withheld evidence had on the defendants rights" and the "outcome of trial"
11  rather than the [reason] for nondisclosure. (Brady at p. 87; also Brown v. Borg,
12  951 F.2d 1011, 1015 (9th Cir. 1996).)    Further, the prosecution, in Brady
13  matters, may not be excused from disclosing what it does not know but could have
14  learned. (Carriger v. Stewart, 132 F.3d 463, 479 (9th Cir. )(en banc), cert.
15  denied 118 S.Ct. 1827, 140 L.Ed.2d 963 (1998); United States v. Kearns, 5 F.3d
16  1251, 1254 (9th Cir. 1993); and Kyles v. Whitley, 514 U.S. 419, 437-38 (1995)).

17

18                        SUPPORTING FACTS TO GROUND II:

19  The prosecution, during petitioner's trial, improperly vouched for various
20  statements made by Baskin allegedly in his interviews with Sgt. Nolan.  Baskin,
21  in one interview with police, gave an account of the shooting of Rankin that
22  suggest petitioner was not in fear of his life as testified to at trial, but
23  rather -- after consuming an Ecstay pill on the night of the murder,
24  petitioner's, according to Baskin, made statements to the effect. . ."I finna
25  pop this nigga like whoo whoo whoo." (Exh 14-A at p.2.)

26  When Baskin denied most of what he had allegedly told Sgt. Nolan in the
27  interviews, the prosecutor had Sgt. Nolan testify at trial that the "recorded"
28  portions of Nolan's interview with Baskin represented the portions where Baskin

                              6 - 7

1  was being truthful.  Thus, this segment of Baskin's testimony, because of the
2  improper vouching by the prosecution, went unchallenged within the meaning of
3  petitioner's rights to Confrontation.  Further, that such error is not harmless.

4      Petitioner contends that the prosecutions "misconduct" at trial violated
5  his Fifth, Sixth, and Fourteenth Amendment right as guaranteed by the U.S.
6  Constitution and the trial court admonishment did not cure said errors as found
7  by the Court of Appeal. (Opn. at p.6.)  Likewise, failure to object is not a
8  bar to certain fundamental rights. (Opn. at p.6)  Thus, the following case law
9  supports petitioner's claim: United States v. Necoechea, 986 F.2d 1273 (9th Cir.
10  1992); United States v. Shaw 829 F.2d 714, 716-18, cert. denied, 485 U.S. 1022
11  (1988); United States v. Smith, 962 F.2d 923 (9th Cir 1992); United States v.
12  Molina, 934 F.2d 1440, 1445 (9th Cir. 1991); and Chapman v. California (1967)
13  386 U.S. 18, 24.

14

15                    SUPPORTING FACTS TO GROUND III:

16      In at least four (4) different instances during trial and closing
17  arguments, the prosecutor in the case at bench committed misconduct either by
18  insults to defense witnesses, or deliberately misstating the law. (4RT 798; 4RT
19  799; 4RT 865; 4RT 866-867.)    Petitioner argued below in state court, among
20  other things, that a prosecutor's intemperate behavior violates the federal
21  constitution when it comprises a patter of conduct "so egregious that it infects
22  the trial with such unfairness as to make the conviction a denial of due
23  process. (Pet. For Review at pp.25-26.)    The court of appeals wrongly found
24  that the trial court admonishment cured the improper statements by the
25  prosecution. (Opn. at p.6)

26      Petitioner contends that he has a secured and absolute right to a "fair
27  trial" and "due Process" throughout the course of such proceedings. (U.S. Const.
28  Fifth, Sixth, and Fourteenth Amend.)  Here, in the instant cause, the prosecutor

                                    6 - 23.

1  infringed upon those rights by conctantly blurting insults about
2  petitioner or defense witnesses in general and/or purposely misstating
3  statutory provisions of the law.    Such prosecutorial miscunduct
4  is cognizable on federal habeas corpus where the due process
5  violation complained of impacts upon petitioner's liberty and
6  other constitutional entitlements. (Hick v. Oklahoma (1980) 447
7  U.S. 343, 346-47; and Walker v. Deeds, 50 F.3d 670 673 (9th Cir.
8  1995)).
9
10                    SUPPORTING FACTS TO GROUND IV:
11      Petitioner's claim of "cumulative" error rests upon the
12  prosections misconduct in failing to disclose the contents of
13  its pretrial interviews with Baskin, which enteracted with the
14  prejudicial effects of the prosecutions improper vouching for
15  the credibility of Baskin's statements to Sgt. Nolan.    Then,
16  at closing arguments, the prosecutor improperly commented about
17  petitioner and his grandmother (a defense witness) who the prosecutor
18  wrongly asserted that she somehow fabricated her testimony to
19  help petitioner.
20      Petitioner contends that the "cumulative" effects of the
21  trial court error(s) here, in the case at bench, constituted
22  a violation of his rights to due process as secured by the Fourteenth
23  Amend. to the U.S. Const.  Further, state law error(s) "that
24  might not be so prejudicial as to amount to a deprivation of
25  due process when considered alone, may cumulatively produce a
26  trial setting that is fundamentally unfair." (Cooper v. Sowders,
27  837 F.2d 284, 286-88 (6th Cir. 1988); Greer v. Miller (1987)
28
                                        6 - 14

1  483 U.S. 756, 764; Taylor v. Kentuckey(1978) 436 U.S. 478, 488;

2  Donnelly v. DeChristoforo (1974) 416 U.S. 637, 642-43; Lincoln

3  v. Sunn, 807 F.2d 805, 814 fn6 (9yh Cir. 1987)).

4

5                    SUPPORTING FACTS TO GROUND V:

6      The prosecutions failure to disclose Mitchell Baskin's conflict-

7  ing  statements made to Sgt. Nolan and the Prosecutor prior to

8  trial deprived petitioner and his trial counsel of an opportunity

9  to cross-examine Baskin thoroughly regarding his conflicting

10  ammounts of the facts leading up to the shooting of Rankin, and

11  Baskin's sorted knowledge of language alledgely used by petitioner

12  in describing how he was giong to "pop" (shot) Rankin. as a

13  result of this failure to disclose, petitioner's counsel failed

14  to object, in a timely fashion, to Sgt. Nolan's testimony regarding

15  the truthfulness of Baskin's taped recorded statements.

16      Petitioner contends that the error(s) here violated his

17  Sixth Amendment right to counsel (Strickland v. Washington, 466

18  U.S. 667, 668); his right to Confrontation under the Fifth and

19  Sixth Amendments (Crawford v. Washington, 541 U.S. 36 (2004);

20  as well as his Fourteenth Amendment right to a fundamentally

21  fair trial and due process (Bruno v. Rushin, 721 F.2d 1193 (9th

22  Cir 1983).

23      Therefore, for each of the reasons set forth herein above,

24  petitioner's conviction should be reversed and the judgment vacated

25  sending the entire matter back to state court with instructions.

26  ///

27  ///

28

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2  are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3  of these cases:

4                  (SEE ADDITIONS TO PAGE SIX AFFIXED HEREWITH.)

5

6

7  Do you have an attorney for this petition?                    Yes_____     No XX

8  If you do, give the name and address of your attorney:

9

10    WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on  4/22/08                              _____

14              Date                                 Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

# PROOF OF SERVICE

(C.C.P. §§1013(a); 2015.5; 28 U.S.C. §1746)

I, _Sam Donte Gray_____, am over the age of eighteen (18) years, and I (am) (am not) a party to the within cause of action. My address is:

_P.O. Box 290066_____
_Represa CA, 95671_____
_____
_____

On, _4/22/08_____, I served the following documents:

_____ Writ of Habeas Corpus _____

_____

_____

on the below named individual(s) by depositing true and correct copies thereof in the United State mail in Represa, California, with postage fully prepaid thereon, addressed as follows:

1. _Northern District of California_  2. _____
   _450 Golden Gate Ave, Box 36060_      _____
   _Sanfrancisco Ca, 94102_              _____
   _____              _____

I have read the above statements and declare under the penalty of perjury of the laws of the State of California that the foregoing is true and correct.

Executed this _22_ day of _April_, _08_, at California State Prison - Sacramento, Represa, California.

(Signature)_Sam Donte Gray_

Exhibit

1

2

3

4

*FILED*

*07 NOV -6  PM 5: 06*

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

5

6            IN THE UNITED STATES DISTRICT COURT

7

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9

10   SAM GRAY,                                      No. C 07-4964 WHA (PR)

11                    Petitioner,                   **ORDER OF DISMISSAL**

12        vs.

13   WALKER, Warden,

14                    Respondent.
                                        /

15

16        Petitioner sent the court a document asking for an enlargement of time to file a federal

17   habeas petition.  In an effort to protect petitioner's rights, the document was treated as

18   commencing a new case.  The clerk sent petitioner a notice informing him that he had failed to

19   pay the five-dollar filing fee or apply for leave to proceed in forma pauperis.  A copy of the

20   court's form for applications to proceed in forma pauperis was provided with the notice, along

21   with a return envelope.  Petitioner was informed that if he did not either pay the fee or file the

22   application within thirty days the case would be dismissed.  The time has expired and no

23   response has been received.

24        This case is therefore **DISMISSED** without prejudice.  The clerk shall close this file.

25        **IT IS SO ORDERED.**

26

27   Dated: November 6 , 2007.

28                                      WILLIAM ALSUP
                                        UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\GRAY4964.DSM.wpd

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAM GRAY,

Plaintiff,

v.

WALKER et al,

Defendant.

_____/

Case Number: CV07-04964 WHA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 6, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sam Gray
V-59334/ C-5-107
Sacramento State Prison
PO Box 290066
Represa, CA 95671

Dated: November 6, 2007

Richard W. Wieking, Clerk
By: D. Toland, Deputy Clerk

FILED

07 NOV -6 PM 5: 06

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAM GRAY,                                      No. C 07-4964 WHA (PR)

              Petitioner,              **JUDGMENT**

   vs.

WALKER, Warden,

              Respondent.
_____/

      Pursuant to the court's order entered today, a judgment of dismissal without prejudice is hereby entered. Plaintiff shall receive no relief by way of his petition.

      **IT IS SO ORDERED.**

Dated: November ____, 2007.

                              WILLIAM ALSUP
                              UNITED STATES DISTRICT JUDGE

G:\PRO-SE\WHA\HC.07\GRAY4964.JUD.wpd

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAM GRAY,

              Plaintiff,

v.

WALKER et al,

              Defendant.
_____/

Case Number: CV07-04964 WHA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 6, 2007, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Sam Gray
V-59334/ C-5-107
Sacramento State Prison
PO Box 290066
Represa, CA 95671

Dated: November 6, 2007

                                       Richard W. Wieking, Clerk
                                       By: D. Toland, Deputy Clerk

(2)

Exhibit

# Memorandum

Date:    10-17-07

To:    CADE
**Correctional Counselor**

From:    Litigation Office, California State Prison-Sacramento, Represa, CA 95671-0027

Subject:    **SERVICE OF LEGAL DOCUMENTS –**
**CERTIFIED TRUST ACCOUNT STATEMENTS (IN FORMA PAUPERIS)**

Inmate Name & Number:  GRAY, SAM  (V-59334)

Housing:  FC5 - 107U

**Per DOM section 140101.19.1**, regarding inmates filing for **In Forma Pauperis** status, "Inmates shall not handle completed CDC Forms 193 or Certified Trust Statements... It shall be provided to a designated staff member, who shall place it in the package in accordance with current legal mail procedures, prior to sealing and initialing of the envelope."

Therefore, the following procedure is necessary:
- Please call for the inmate and have him bring his legal paperwork with him. It needs to be ready for mailing. (Advise him to be ready to go BEFORE sending application to the Trust Office in the future.)
- After checking the inmate's I.D. and assuring it matches the paperwork being mailed, search the contents of the envelope for contraband, and then place the Certified Trust Account Statement in his envelope.
- Seal the envelope, then sign and date per Legal Mail procedure. The envelope needs to be taken to the mailroom by you.
  **\* Please note this change in procedure of bringing envelope to the mailroom instead of leaving it in Unit Legal Mailbox is the only change to the procedure.**
- Both the Counselor and Inmate need to sign and date the attached 128b stating that this ......... was followed. Please forward the ,28b to Records for filing or return it with this paperwork to the Litigation Office. Please ensure this memo returns to our office in order for us to log it as completed.
- **Please note this document is time sensitive as the court has given the inmate a deadline. Please serve within 7 business days from date of this memo.**
- **If inmate claims he's not ready, please attempt service again within a day or two. If inmate is still not ready, please return the paperwork to our office. We will destroy the statement, and the inmate will need to restart the process when he is ready. If inmate refuses, please also return paperwork to our office for us to destroy.**
- **Only ONE statement per envelope. If there are multiple statements attached to this memo, return any unused statements to Litigation.**

*Thank you for your help in this process.*

If you have any questions or concerns please contact Jen Harte at extension 3123.

_____D Cade_____              10 15 07

Signature of staff member serving the document(s)              Date Served

**LINDA YOUNG**
**Litigation Coordinator**

## MAIL CARD (CDC FORM 119)
### SPECIAL PURPOSE LETTERS

NAME:        GRAY, S

CDC#         V-59334

## DATE                         DESTINATION 2006

| | |
|---|---|
| 1/30/06 | PHILIP BROOKS  1442A WALNUT ST # 233  BERKELEY CA  94709 |
| 5/3/06 | PHILIP BROOKS  1442A WALNUT ST # 233  BERKELEY CA  94709 |
| 9/29/06 | PHILIP BROOKS  1442A WALNUT ST # 233  BERKELEY CA  94709 |
| 7/24/07 | SUPERIOR COURT OF CALIFORNIA  1225 FALLON ST  OAKLAND, CA  94612-4293 |
| 8/17/07 | SUPREME COURT OF CALIFORNIA  350 MCALLISTER ST  SAN FRANCISCO, CA  94102 |
| 8/21/07 | 1ST DISTRICT COURT OF APPEAL  730 HARRISON ST  SAN FRANCISCO, CA  94107 |
| 8/21/07 | SUPREME COURT OF CALIFORNIA  350 MCALLISTER ST  SAN FRANCISCO, CA  94102 |
| 9/21/07 | US DISTRICT COURT  450 GOLDEN GATE BLVD  SAN FRANCISCO, CA  94102 |
| 10/19/07 | US COURT OF APPEALS  450 GOLDEN GATE BLVD  SAN FRANCISCO, CA  94102 |

```
TS210B                CALIFORNIA DEPARTMENT OF CORRECTIONS
                          ITAS TRUST ACCOUNT DISPLAY

-------------- ACCOUNT INFORMATION --------------- ------ SPECIAL ITEMS -------

ACCOUNT  NUMBER:  V59334
   ACCOUNT NAME:  GRAY, SAM  DONTE
   ACCOUNT TYPE:  I
CURRENT BALANCE:        0.00
   HOLD BALANCE:        0.00
ENCUM. BALANCE:         0.00
      AVAILABLE:        0.00
PRIVILEGE GROUP:  A
   LAST CANTEEN:  09/19/2006
------------------------- ACCOUNT TRANSACTIONS -------------------------TS210CA
   DATE    TRAN   AMOUNT      DESCRIPTION    CHECK NUM    COMMENT     BALANCE
 -------- ---- ----------- --------------- ----------- ----------- -----------
 12/01/05 W521     21.00  FUND RAISER CHA               501682BANQ     50.32
 12/06/05 FC03     50.32  DRAW-FAC 3                    501735CFAC      0.00
 05/15/06 DD30     84.00  CASH DEPOSIT ON               MR6964ROC      84.00
 07/18/06 FC03     84.00  DRAW-FAC 3                    600132CFAC      0.00
 08/14/06 FR01      3.39- CANTEEN RETURN                600448         3.39
 09/19/06 FC03      3.39  DRAW-FAC 3                    CFAC600846      0.00
 PAGE#    1 OF    2 PAGES
```

*Trust acct actv.*
*CCI Cade   11/29/07*



(3)

Exhibit

```
TS210B                  CALIFORNIA DEPARTMENT OF CORRECTIONS
                            ITAS TRUST ACCOUNT DISPLAY
```

```
-------------- ACCOUNT INFORMATION -------------- ------ SPECIAL ITEMS -------
```

| | |
|---|---|
| ACCOUNT    NUMBER: | V59334 |
| ACCOUNT NAME: | GRAY, SAM   DONTE |
| ACCOUNT TYPE: | I |
| CURRENT BALANCE: | 12.54 |
| HOLD BALANCE: | 0.00 |
| ENCUM. BALANCE: | 0.00 |
| AVAILABLE: | 12.54 |
| PRIVILEGE GROUP: | A |
| LAST CANTEEN: | 09/19/2006 |

```
------------------------- ACCOUNT TRANSACTIONS -------------------------TS210CA
```

| DATE | TRAN | AMOUNT | DESCRIPTION | CHECK NUM | COMMENT | BALANCE |
|---|---|---|---|---|---|---|
| 09/19/06 | FC03 | 3.39 | DRAW-FAC 3 | | CFAC600846 | 0.00 |
| 01/04/08 | VD54 | 4.94 | INMATE PAYROLL- | | 701847/DEC | 4.94 |
| 02/04/08 | VD54 | 2.84 | INMATE PAYROLL- | | 702198/JAN | 7.78 |
| 02/04/08 | VD54 | 7.02 | INMATE PAYROLL- | | 702198/JAN | 14.80 |
| 02/20/08 | W415 | 5.00 | CASH WITHDRAWAL | 205-044383 | 702398C/WD | 9.80 |
| 03/04/08 | VD54 | 2.74 | INMATE PAYROLL- | | 702526/FEB | 12.54 |

```
PAGE#    1 OF    3 PAGES
```

Exhibit 4

SECOND & THIRD WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 2/7/08 @ 7:00 P.M.*

Date:     February 7, 2008

To:       **C-FACILITY STAFF AND INMATE POPULATION**

From:     California State Prison-Sacramento, Represa, CA. 95671

Subject:  **C-FACILITY OPERATIONS FOR THURSDAY, FEBRUARY 7, 2008, UNTIL FURTHER NOTICE**

**Due to a riot involving Asian and Black inmates which occurred on the C-Facility Main Yard on 2/7/08, at approximately 1400 hours, effective today, 2/7/08, all Asian and Black inmates, and those celled with them, are on lockdown status. Northern Hispanic inmates and those celled with them, will continue their modified program status. All remaining inmates will continue normal programming. (Reference Incident Report # SAC-FAC-08-02-0071 & attached lists.)**

**Feeding:**     Cell feeding for all inmates.

**Work &**     No work or education for all Asian and Black inmates, and those celled with them. However,
**Education:**    inmates assigned to the Academic and Bridging Program will continue to participate with in-
cell assignments.

Modified work program in assigned Buildings, Second and Third Watch, for Northern Hispanic inmates and those celled with them. Work/Education program for Hispanic inmates. Normal work/education programs for the remaining population.

**Yard:**      No yard for all Asian and Black inmates, and those celled with them.

Concrete Yard program for Northern Hispanic inmates and those celled with them, on Mondays, Wednesdays and Fridays, from 1330-1545 hours for Blocks 5 & 7; On Tuesdays, Thursdays and Saturdays, from 1330-1545 hours for Blocks 6 & 8. Northern Hispanic Yard will consist of 20 inmates per concrete Yard. No Main Yard program for Northern Hispanic inmates and those celled with them. Normal yard programs for the remaining inmate population. Normal Yard program for all Dorm inmates.

**Evening**     No evening program for all Level IV inmates. Normal program for all Dorm inmates.
**Program:**

**Telephone:**   No telephone privileges for all Asian and Black inmates, and those celled with them. Normal telephone privileges for the remaining inmate population.

**Showers:**    Controlled unrestrained showers, one cell at a time, on Tuesdays, Thursdays, and Saturdays, for all Asian and Black inmates, and those inmates celled with them. Normal shower program for the remaining inmate population.

**Visiting:**    No visiting for all Asian and Black inmates, and those celled with them. All Northern Hispanics, and those celled with them, shall be escorted to and from their visit unrestrained. Normal visiting for the remaining inmate population.

**Family**      No family visits for all Asian and Black inmates, and those celled with them. Normal family
**Visiting:**    visiting for the remaining inmate population.

**Religious**    Chaplains by request for all Asian and Black inmates, and those inmates celled with them.
**Services:**    Chaplains by request for all Northern Hispanic inmates and those celled with them. Normal religious services for the remaining inmate population.

1 of 2 _____

**Medical Services:** Medical services will be provided by LVN's during rounds. If necessary, all Asian and Black inmates, and those inmates celled with them on lockdown status, will be escorted/transported unrestrained to the Clinic. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal medical services for the remaining inmate population.

**Canteen:** No canteen for all Asian and Black inmates, and those celled with them. Northern Hispanics and those celled with them will be escorted to the canteen by a Building Officer. Normal canteen program for the remaining inmate population.

**Legal Library:** All Asian and Black inmates, and those inmates celled with them, will use the paging process. All Northern Hispanics and those celled with them shall have physical access to the Law Library based on the Hispanic Access Rotational Schedule, paging otherwise. Normal library program for the remaining inmate population.

**Clothing Exchange:** Clothing exchange will be at the cell door for all Asian and Black inmates, Northern Hispanics, and those celled with them. Normal clothing exchange for the remaining inmate population.

**Packages & Property:** No packages/special purchases delivery for all Asian and Black inmates, and those celled with them. Normal packages/special purchases delivery for the remaining inmate population. Normal property delivery for all inmates.

**MAC:** No MAC program for all Asian and Black inmates, and those celled with them. Modified MAC representatives in assigned Buildings only, no inter-Building access for Northern Hispanics or those celled with them.

Normal MAC Program for all remaining MAC members (Reference Warden's Memo dated April 18, 2005).

**NA/AA & Men's Group:** No NA/AA & Men's Group for all Asian and Black inmates, and those celled with them. Normal NA/AA by ducat, for all Northern Hispanics and those celled with them. Normal for the remaining inmate population.

**Escorts:** All Asian and Black inmates, and those celled with them will be escorted unrestrained; Northern Hispanics and those inmates celled with them will be escorted unrestrained within the Facility. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

D. LEIBER
C-Facility Correctional Captain
California State Prison-Sacramento

State of California                                          **Department of Corrections and Rehabilitation**

                                                            **SECOND & THIRD WATCH CONTROL OFFICERS WILL**
                                                            **READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM**

# MEMORANDUM                                                *LAST REVISED: 2/11/08 @ 8:54 AM.*

Date:    February 11, 2008

To:      **C-FACILITY STAFF AND INMATE POPULATION**

From:    California State Prison-Sacramento, Represa, CA. 95671

Subject: **C-FACILITY OPERATIONS FOR MONDAY, FEBRUARY 11, 2008, UNTIL FURTHER NOTICE**

**Due to a riot involving Asian and Black inmates which occurred on the C-Facility Main Yard on 2/7/08, at approximately 1400 hours, all Asian and Black inmates, and those celled with them, are on lockdown status.**

**Due to a stabbing assault involving Southern Hispanic inmates which occurred on the C-Facility Main Yard on 2/11/08, at approximately 0820 hours, effective today, 2/11/08, all Southern Hispanics and those celled with them, are on lockdown status.**

Northern Hispanic inmates and those celled with them, will continue their modified program status. All remaining inmates will continue normal programming.    (Reference Incident Reports # SAC-FAC-08-02-0071; SAC-FAC-08-02-0080 & attached lists.)

| | |
|---|---|
| **Feeding:** | Cell feeding for all inmates. |
| **Work & Education:** | No work or education for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. However, inmates assigned to the Academic and Bridging Program will continue to participate with in-cell assignments. |
| | Modified work program in assigned Buildings, Second and Third Watch, for Northern Hispanic inmates and those celled with them. Modified education programs for Northern Hispanic inmates. Normal work/education programs for the remaining population. |
| **Yard:** | No yard for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. |
| | Concrete Yard program for Northern Hispanic inmates and those celled with them, on Mondays, Wednesdays and Fridays, from 1330-1545 hours for Blocks 5 & 7; On Tuesdays, Thursdays and Saturdays, from 1330-1545 hours for Blocks 6 & 8. Northern Hispanic Yard will consist of 20 inmates per concrete Yard. No Main Yard program for Northern Hispanic inmates and those celled with them. Normal yard programs for the remaining inmate population. Normal Yard program for all Dorm inmates. |
| **Evening Program:** | No evening program for all Level IV inmates. Normal program for all Dorm inmates. |
| **Telephone:** | No telephone privileges for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Normal telephone privileges for the remaining inmate population. |
| **Showers:** | Controlled unrestrained showers, one cell at a time, on Tuesdays, Thursdays, and Saturdays, for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Normal shower program for the remaining inmate population. |
| **Visiting:** | No visiting for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. All Northern Hispanics, and those celled with them, shall be escorted to and from their visit unrestrained. Normal visiting for the remaining inmate population. |
| **Family Visiting:** | No family visits for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Normal family visiting for the remaining inmate population. |
| **Religious Services:** | Chaplains by request for all Asian and Black inmates, all Southern Hispanic and Northern Hispanic inmates, and those celled with them. Normal religious services for the remaining inmate population. |

C-FACILITY OPERATIONS FOR  ONDAY, FEBRUARY 11, 2008, UNTIl  URTHER NOTICE

**Medical Services:** Medical services will be provided by LVN's during rounds. If necessary, all Asian and Black, and Southern Hispanic inmates; and those celled with them on lockdown status, will be escorted/transported unrestrained to the Clinic. Medical Ducats will be honored for all inmates on lockdown status. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal medical services for the remaining inmate population.

**Canteen:** No canteen for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Northern Hispanics and those celled with them will be escorted to the canteen by a Building Officer. Normal canteen program for the remaining inmate population.

**Legal Library:** All Asian and Black inmates; all Southern Hispanic inmates, and those celled with them, will use the paging process. All Northern Hispanics and those celled with them shall have physical access to the Law Library based on the Hispanic Access Rotational Schedule, paging otherwise. Normal library program for the remaining inmate population.

**Clothing Exchange:** Clothing exchange will be at the cell door for all Asian and Black inmates, all Southern Hispanic and Northern Hispanic inmates, and those celled with them. Normal clothing exchange for the remaining inmate population.

**Packages & Property:** No packages/special purchases delivery for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Normal packages/special purchases delivery for the remaining inmate population. Normal property delivery for all inmates.

**MAC:** No MAC program for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Modified MAC representatives in assigned Buildings only, no inter-Building access for Northern Hispanics or those celled with them.

Normal MAC Program for all remaining MAC members (Reference Warden's Memo dated April 18, 2005).

**NA/AA & Men's Group:** No NA/AA & Men's Group for all Asian and Black inmates; all Southern Hispanic inmates, and those celled with them. Normal NA/AA by ducat, for all Northern Hispanics and those celled with them. Normal for the remaining inmate population.

**Escorts:** All Asian, Black, and Southern Hispanic inmates, and those celled with them will be escorted unrestrained; Northern Hispanics and those celled with them will be escorted unrestrained within the Facility. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

D. LEIBER
C-Facility Correctional Captain
California State Prison-Sacramento

2 of 2

State of California
Case 3:08-cv-02259-WHA    Document 1    Filed 04/30/2008    Page 34 of 43
Department of Corrections and Rehabilitation
SECOND & Ti....D WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 2/14/08 @ 3:00 PM.*

Date:    February 14, 2008

To:    **C-FACILITY STAFF AND INMATE POPULATION**

From:    California State Prison-Sacramento, Represa, CA. 95671

Subject:    **C-FACILITY OPERATIONS FOR THURSDAY, FEBRUARY 14, 2008, UNTIL FURTHER NOTICE**

**Effective immediately, and due to the following list of incidents, all Level-IV inmates housed in C-Facility are on lockdown status, until further notice. The only exception will be inmates on the approved Critical Workers List (attached).**

**On Thursday, February 7, 2008, a riot involving Asian and Black inmates which occurred on the C-Facility Main Yard.**

**On Monday, February 11, 2008, a stabbing assault involving Southern Hispanic inmates occurred on the C-Facility Main Yard.**

**On Thursday, February 14, 2008, a battery on an inmate with a weapon resulting in death involving White inmates occurred on the C-Facility Small Side Yard.**

**For these reasons all Level-IV inmates housed in C-Facility are on lockdown status and the following programming adhered to, until further notice.**

**Feeding:**    Cell feeding for all inmates.

| | |
|---|---|
| **Work & Education:** | No work or education for all Level-IV inmates. However, inmates assigned to the Academic and Bridging Program will continue to participate with in-cell assignments. The Level-I Dorm inmates will be utilized as needed for the Yard, Work Center and Dining Room areas |
| **Yard:** | No yard for all Level-IV inmates. Normal program for all Dorm inmates. |
| **Evening Program:** | No evening program for all Level IV inmates. Normal program for all Dorm inmates. |
| **Telephone:** | No telephone privileges for all Level IV inmates. Normal program for all Dorm inmates. |
| **Showers:** | Controlled unrestrained showers, one cell at a time, on Tuesdays, Thursdays, and Saturdays, for all Level IV inmates. Normal program for all Dorm inmates. |
| **Visiting:** | No visiting for all Level IV inmates. Normal program for all Dorm inmates. |
| **Family Visiting:** | No family visits for all Level IV inmates. Normal program for all Dorm inmates. |
| **Religious Services:** | Chaplains by request for all Level IV inmates. Normal program for all Dorm inmates. |
| **Medical Services:** | Medical services will be provided by LVN's during rounds. If necessary, all Level IV inmates will be escorted/transported unrestrained to the Clinic. Medical Ducats will be honored for all inmates on lockdown status. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal program for all Dorm inmates. |
| **Canteen:** | No canteen for all Level IV inmates. Normal program for all Dorm inmates. |
| **Legal Library:** | All Level IV inmates will use the paging process. Normal program for all Dorm inmates. |
| **Clothing Exchange:** | Clothing exchange will be at the cell door for all Level IV inmates. Normal program for all Dorm inmates. |

**Packages & Property:** No packages/special purchases delivery for all Level IV inmates. Normal program for all Dorm inmates.

**MAC:** No MAC program for all Level IV inmates. Normal program for all Dorm inmates.

**NA/AA & Men's Group:** No NA/AA & Men's Group for all Level IV inmates.

**Escorts:** All Level IV inmates will be escorted unrestrained within the Facility. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

D. LEIBER
C-Facility Correctional Captain
California State Prison-Sacramento

State of California Case 3:08-cv-02259-WHA    Document 1    Filed 04/30/2008 Department of Corrections and Rehabilitation Page 36 of 43

SECOND & THIRD WATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 2/28/08 @ 7:31 AM.*

Date:    February 28, 2008

To:    **C-FACILITY STAFF AND INMATE POPULATION**

From:    California State Prison-Sacramento, Represa, CA. 95671

Subject:    **C-FACILITY OPERATIONS FOR THURSDAY, FEBRUARY 28, 2008, UNTIL FURTHER NOTICE**

**Effective immediately, and due to the following list of incidents, all Level-IV inmates housed in C-Facility are on lockdown status, until further notice. The only exception will be inmates on the approved Critical Workers List (attached).**

**On Thursday, February 7, 2008, a riot involving Asian and Black inmates which occurred on the C-Facility Main Yard.**

**On Monday, February 11, 2008, a stabbing assault involving Southern Hispanic inmates occurred on the C-Facility Main Yard.**

**On Thursday, February 14, 2008, a battery on an inmate with a weapon resulting in death involving White inmates occurred on the C-Facility Small Side Yard.**

**For these reasons the following lockdown program is in effect until further notice. ALL Level-IV inmates housed in C-Facility will remain on lockdown status pending completion of a Facility search, except for Critical Workers. (See attached list.)**

(☉ indicates changes)

Feeding:    Cell feeding for all inmates.

Work & Education: ☉    No work or education for all Level-IV inmates, except for Critical Workers. However, inmates assigned to the Academic and Bridging Program will continue to participate with in-cell assignments. The Level-I Dorm inmates will be utilized as needed for the Yard, Work Center and Dining Room areas.

Yard:    No yard for all Level-IV inmates. Normal program for all Dorm inmates.

Evening Program:    No evening program for all Level IV inmates. Normal program for all Dorm inmates.

Telephone:    No telephone privileges for all Level IV inmates. Normal program for all Dorm inmates.

Showers: ☉    Controlled unrestrained showers, one cell at a time, on Tuesdays, Thursdays, and Saturdays, for all Level IV inmates, except for Critical Workers. Normal program for all Critical Workers & Dorm inmates.

Visiting: ☉    Escorted visiting to and from the Visiting Room unrestrained for all Level IV inmates. Normal program for all Dorm inmates.

Family Visiting:    No family visits for all Level IV inmates. Normal program for all Dorm inmates.

Religious Services:    Chaplains by request for all Level IV inmates. Normal program for all Dorm inmates.

Medical Services:    Medical services will be provided by LVN's during rounds. If necessary, all Level IV inmates will be escorted/transported unrestrained to the Clinic. Medical Ducats will be honored for all inmates on lockdown status. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal program for all Dorm inmates.



1 of 2

**Canteen:** ○ No canteen for all Level IV inmates, except for Critical Workers. Normal program for all Dorm inmates.

**Legal Library:** All Level IV inmates will use the paging process. Normal program for all Dorm inmates.

**Clothing Exchange:** Clothing exchange will be at the cell door for all Level IV inmates. Normal program for all Dorm inmates.

**Packages & Property:** No packages/special purchases delivery for all Level IV inmates. Normal program for all Dorm inmates. Normal property delivery for all inmates.

**MAC:** No MAC program for all Level IV inmates. Normal program for all Dorm inmates.

**NA/AA & Men's Group:** No NA/AA & Men's Group for all Level IV inmates.

**Escorts:** All Level IV inmates will be escorted unrestrained within the Facility. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic simultaneous movement is to occur in any location within C-Facility. Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7, and 8. Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note: Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

C. LEIBER
C-Facility Correctional Captain
California State Prison-Sacramento

SECOND & THIRD wATCH CONTROL OFFICERS WILL
READ THIS MEMO OVER PUBLIC ADDRESS SYSTEM

# MEMORANDUM

*LAST REVISED: 3/3/08 @ 10:54 AM.*

Date:     March 3, 2008

To:       **C-FACILITY STAFF AND INMATE POPULATION**

From:     California State Prison-Sacramento, Represa, CA. 95671

Subject:  **C-FACILITY OPERATIONS FOR MONDAY, MARCH 03, 2008, UNTIL FURTHER NOTICE**

**On Thursday, February 7, 2008, a riot involving Asian and Black inmates which occurred on the C-Facility Main Yard.**

**On Monday, February 11, 2008, a stabbing assault involving Southern Hispanic inmates occurred on the C-Facility Main Yard.**

**On Thursday, February 14, 2008, a battery on an inmate with a weapon resulting in death involving White inmates occurred on the C-Facility Small Side Yard.**

Due to the above list of incidents, all Level-IV inmates housed in C-Facility will remain on lockdown status, until further notice. The only exception will be inmates on the approved Critical Workers List (attached)

(○ Indicates changes)

| | |
|---|---|
| **Feeding:** | Cell feeding for all inmates. |
| **Work & Education:** | No work or education for all Level-IV inmates, except for Critical Workers. However, inmates assigned to the Academic and Bridging Program will continue to participate with in-cell assignments. The Level-I Dorm inmates will be utilized as needed for the Yard, Work Center and Dining Room areas. |
| **Yard:** ○ | No yard for all Level-IV inmates, except for Critical Workers.  Modified yard schedule for Critical Workers. Normal program for all Dorm inmates. |
| **Evening Program:** | No evening program for all Level IV inmates.  Normal program for all Dorm inmates. |
| **Telephone:** | No telephone privileges for all Level IV inmates.  Normal program for all Dorm inmates. |
| **Showers:** | Controlled unrestrained showers, one cell at a time, on Tuesdays, Thursdays, and Saturdays, for all Level IV inmates, except for Critical Workers.  Normal program for all Critical Workers & Dorm inmates. |
| **Visiting:** | Escorted visiting to and from the Visiting Room unrestrained for all Level IV inmates.  Normal program for all Dorm inmates. |
| **Family Visiting:** | No family visits for all Level IV inmates.  Normal program for all Dorm inmates. |
| **Religious Services:** | Chaplains by request for all Level IV inmates.  Normal program for all Dorm inmates. |
| **Medical Services:** | Medical services will be provided by LVN's during rounds.  If necessary, all Level IV inmates will be escorted/transported unrestrained to the Clinic.  Medical Ducats will be honored for all inmates on lockdown status.  Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency.  Normal program for all Dorm inmates. |

1 of

State of California

# MEMORANDUM

*LAST REVISED: 3/5/08 @ 9:49 AM.*

Date:     March 5, 2008

To:       **C-FACILITY STAFF AND INMATE POPULATION**

From:     California State Prison-Sacramento, Represa, CA. 95671

Subject:  **C-FACILITY OPERATIONS FOR THURSDAY, MARCH 6, 2008, UNTIL FURTHER NOTICE**

**Effective 3/6/08, all Level-IV inmates housed in C-Facility will resume normal programming. Northern Hispanic inmates and those celled with them, will continue their modified program status. Normal program for the remaining inmate population**

| | |
|---|---|
| **Feeding:** | Cell feeding for all inmates. |
| **Work & Education:** | Modified work program in assigned Buildings, Second and Third Watch, for Northern Hispanic inmates and those celled with them. Modified education programs for Northern Hispanic inmates. Normal work/education programs for the remaining population. |
| **Yard:** | Concrete Yard program for Northern Hispanic inmates and those celled with them, on Mondays, Wednesdays and Fridays, from 1330-1545 hours for Blocks 5 & 7; On Tuesdays, Thursdays and Saturdays, from 1330-1545 hours for Blocks 6 & 8. Northern Hispanic Yard will consist of 20 inmates per concrete Yard. Modified yard program for Northern Hispanic inmates and those celled with them. Normal yard programs for the remaining inmate population. Normal Yard program for all Dorm inmates. |
| **Evening Program:** | No evening program for all Level-IV inmates. Normal program for all Dorm inmates. |
| **Telephone:** | Normal telephone privileges for all inmates. |
| **Showers:** | Normal shower program for all inmates. |
| **Visiting:** | All Northern Hispanics, and those celled with them, shall be escorted to and from their visit unrestrained. Normal visiting for the remaining inmate population. |
| **Family Visiting:** | Normal family visiting for all inmates. |
| **Religious Services:** | Chaplains by request for all Northern Hispanic inmates and those celled with them. Normal religious services for the remaining inmate population. |
| **Medical Services:** | Medical services will be provided by LVN's during rounds. Northern Hispanics and those celled with them, who are ducated will be escorted to the Clinic based on the established Hispanic rotational schedule. The Northern and Southern Hispanic schedule is subject to change per emergency. Normal medical services for the remaining inmate population. |
| **Canteen:** | Northern Hispanics and those celled with them will be escorted to the canteen by a Building Officer. Normal canteen program for the remaining inmate population. |
| **Legal Library:** | All Northern Hispanics and those celled with them shall have physical access to the Law Library based on the Hispanic Access Rotational Schedule, paging otherwise. All Southern Hispanics and those celled with them shall have access to the Law Library based on the Hispanic Access Rotational Schedule. Normal library program for the remaining inmate population. |
| **Clothing Exchange:** | Clothing exchange will be at the cell door for all Northern Hispanics, and those celled with them. Normal clothing exchange for the remaining inmate population. |

1 of 2

**C-FACILITY OPERATIONS FO   HURSDAY, MARCH 6, 2008, UNTIL    RTHER NOTICE**

**Packages &**   Normal package/special purchase & property delivery for all inmates.
**Property:**

**MAC:**   Modified MAC representatives in assigned Buildings only, no inter-Building access for Northern Hispanics or those celled with them.

   Normal MAC Program for all remaining MAC members (Reference Warden's Memo dated April 18, 2005).

**NA/AA &**   Normal NA/AA by ducat, for all Northern Hispanics and those celled with them.  Normal for
**Men's Group:**   the remaining inmate population.

**Escorts:**   All Northern Hispanics and those inmates celled with them will be escorted unrestrained within the Facility. All Level IV, Level I & II inmates will be placed in handcuffs behind their back when departing the Facility.

No Northern Hispanic and Southern Hispanic simultaneous movement is to occur in any location within C-Facility.  Northern Hispanic inmates will be housed only in Blocks: 5, 6, 7 and 8.  Southern Hispanic inmates will be housed only in Blocks: 1, 2, 3 and 4.

Note:  Disruptive Group Designation is based upon Staff observation and Suspicion of Disruptive Group activity.

**D. LEIBER**
C-Facility Correctional Captain
California State Prison-Sacramento

5

Exhibit

S155516

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re SAM DONTE GRAY on Habeas Corpus

---

The petition for writ of habeas corpus is denied.

George, C. J., was absent and did not participate.

SUPREME COURT
**FILED**

JAN **3 0** 2008

Frederick K. Ohlrich Clerk

Deputy

**BAXTER**
Acting Chief Justice

San Geray V-50139YC-6-206
P.O. Box 290046
Represa Ca 95671

RECEIVED

APR 29 2008

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Northern District of California
450 Golden Gate Ave Box 36060
San Francisco Ca, 94102

