IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAM DONTE GRAY, | No. C 08-2259 WHA (PR) |
| Petitioner, | **ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |
| v. | |
| J.L. WALKER, Warden | |
| Respondent. | |

## INTRODUCTION

This is a habeas corpus case filed by a state prisoner pursuant to 28 U.S.C. 2254. Respondent was ordered to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it. Petitioner has filed a traverse. For the reasons set forth below, the petition is **DENIED**.

## STATEMENT

In 2004, an Alameda County jury convicted petitioner of second degree murder with use of a firearm. Cal. Pen. Code §§ 187, 12022.53(b). Petitioner was sentenced to forty years to life in prison (Exh. 6D at 914). His conviction was affirmed on direct appeal by the California Court of Appeal on April 17, 2006, and the California Supreme Court denied review on July 26, 2006 (Exhs. 10 and 12). On August 27, 2007, petitioner filed a habeas petition with the California Court of Appeal, which was denied on August 30, 2007 (Exhs. 15, 16). Petitioner filed a habeas petition with the California Supreme Court on August 20, 2007, which was

denied on January 1, 2008 (Exhs. 13, 14). Petitioner filed the instant federal habeas petition on April 30, 2008

The following facts are taken from the opinion of the California Court of Appeal (Exh. 10 at 2).

Petitioner first met the victim, Kenneth Rankin, in 2001 at the Camp Sweeney Juvenile Detention Facility. At the time, Rankin and several others attacked petitioner. Rankin threatened to kill petitioner if he ever saw him again outside the facility. Shortly after the two were released, petitioner again encountered Rankin on a street in Oakland. Rankin threatened to fight petitioner, but petitioner walked away.

Despite his professed fear of Rankin, petitioner asked Rankin to supply him with cocaine to sell. The day before the shooting, petitioner informed Rankin that his cocaine had been stolen. Rankin demanded payment for the cocaine. Petitioner's grandmother testified that Rankin visited her house that evening, brandishing a gun and looking for petitioner. Rankin told her he wanted to kill petitioner. Because of the threat, petitioner traded some cocaine for a loaded handgun.

The next day, September 7, 2002, Rankin found petitioner playing dice in the street. Rankin told bystanders to hold petitioner while he retrieved a firearm. Carrying the handgun he had purchased a day earlier, petitioner ran around the corner and saw Rankin walking down the street. Petitioner pulled a hood over his head so Rankin would not recognize him. Petitioner walked past Rankin, then turned and fatally shot Rankin in the back of the head. Petitioner fled the scene.

A police officer testified that on September 29, 2002, he arrested Mitchell Baskin for speeding and for outstanding warrants. In a partially tape-recorded conversation following his arrest, Baskin told police he heard petitioner threaten to kill Rankin and had witnessed the shooting. Baskin also provided many details about the crime. Baskin expressed his belief that petitioner shot Rankin because of an argument at a dice game, and that petitioner was not defending himself when he shot Rankin.

**ANALYSIS**

**A.   STANDARD OF REVIEW**

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407–09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of Section 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412–13. A state court decision is an "unreasonable application of" Supreme Court authority, falls under the second clause of Section 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *See id.* at 409.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary." *Miller-El*, 537 U.S. at 340. This presumption is not altered by the fact that the finding was made by a state court of appeals, rather than by a state trial court. *Sumner v. Mata*, 449 U.S. 539, 546–47 (1981); *Bragg v. Galaza*, 242 F.3d 1082,

1087 (9th Cir. 2001), *amended*, 253 F.3d 1150 (9th Cir. 2001).  A petitioner must present clear and convincing evidence to overcome Section 2254(e)(1)'s presumption of correctness; conclusory assertions will not do.  *Ibid.*

Under 28 U.S.C. 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  *Miller-El*, 537 U.S. at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803–04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n.2 (9th Cir. 2000).

**B.    ISSUES PRESENTED**

As grounds for federal habeas relief, petitioner asserts that: (1) his rights to confrontation, due process, and effective assistance of counsel were violated when the prosecutor withheld evidence from the defense; (2) the prosecutor committed misconduct by vouching for the credibility of a witness; and (3) the prosecutor committed misconduct in closing argument by making several improper statements.

### 1.    Prosecutor's Failure to Disclose Witness Statements

Petitioner claims that his rights to confrontation, due process, and effective assistance of counsel were violated by the prosecution's failure to disclose in discovery all of the statements obtained from Mitchell Baskin ("Baskin").  According to the state appellate court, the withheld statements "referr[ed] to Baskin's 'family relations,' the fact that Baskin and [petitioner] were riding in a car instead of on foot when they spoke, statements that Baskin was present when the shooting occurred, and an alleged threat made by [petitioner] to another man" (Exh. 10 at 3).  These statements were elicited in three unrecorded interviews between the prosecutor, a police investigator, and Baskin in the weeks before trial (*ibid.*).

The court of appeal rejected the claim concluding that, while the prosecutor had an obligation to disclose the information, a failure to disclose "violates the Constitution only when the prosecution does not disclose material exculpatory evidence" (*id.* at 5).  The court found

4

1  that petitioner made "no claim that the omitted evidence was exculpatory" (*ibid.*).  The court
2  also found that the curative steps taken by the trial court were fully adequate to avoid any
3  prejudice to petitioner (*id.* at 4).

4  Petitioner's claim must be based on a *Brady* violation to state a cognizable federal claim
5  for failure to disclose evidence.  *See Brady v. Maryland*, 373 U.S. 83, 87 (1963); *Gray v.*
6  *Netherland*, 518 U.S. 152, 168 (1996) (holding that " '[t]here is no general constitutional right
7  to discovery in a criminal case, and *Brady*,' which addressed only exculpatory evidence, 'did
8  not create one' ") (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

9  In *Brady*, the Supreme Court held that "the suppression by the prosecution of evidence
10  favorable to an accused upon request violates due process where the evidence is material either
11  to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady*,
12  373 U.S. at 87.  The Supreme Court has since made clear that the duty to disclose such evidence
13  applies even when there has been no request by the accused.  *United States v. Agurs*, 427 U.S.
14  97, 107 (1976).  Evidence is material "if there is a reasonable probability that, had the evidence
15  been disclosed to the defense, the result of the proceeding would have been different.  A
16  'reasonable probability' is a probability sufficient to undermine confidence in the outcome."
17  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

18  "There are three components of a true *Brady* violation: [t]he evidence at issue must be
19  favorable to the accused, either because it is exculpatory, or because it is impeaching; that
20  evidence must have been suppressed by the State, either willfully or inadvertently; and
21  prejudice must have ensued."  *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  "[T]here is
22  never a real '*Brady* violation' unless the nondisclosure was so serious that there is a reasonable
23  probability that the suppressed evidence would have produced a different verdict."  *Id.* at 281.

24  Petitioner does not show how the withheld evidence was exculpatory, or whether
25  inclusion of the statements would have had a reasonable probability of leading to a different
26  verdict.  Petitioner only provides two arguments regarding the alleged *Brady* violation.  First,
27  "the appropriate inquiry under *Brady* is the 'effect the withheld evidence had on the defendants
28  [sic] rights' and the 'outcome of trial' rather than the reason for nondisclosure" (Pet. 12).

5

1  Second, "the prosecution, in *Brady* matters, may not be excused from disclosing what it does
2  not know but could have learned" (*ibid.*). Petitioner's statements of law do not address the
3  factual query of whether the evidence was exculpatory, nor do these statements address whether
4  a different verdict would have been reached.

5  Furthermore, petitioner's traverse undermines his *Brady* claim. Petitioner's traverse
6  focuses on two sets of undisclosed statements: (1) statements regarding petitioner's earlier
7  threat to kill someone named Larry; and (2) statements regarding Baskin's role as a frequent
8  and reliable informant for the prosecution (Traverse 6). Petitioner asserts that the first
9  undisclosed statement "directly tended to undercut appellant's defense of imperfect self-
10 defense," and the second undisclosed statement "augmented the effect of the first, by suggesting
11 to the jury that . . . Baskin's out-of-court statements should be trusted" (*id.* at 6–7).
12 Plaintiff's characterization of these statements as undercutting his defense admits that they are
13 inculpatory.

14 In addition to failing the first part of the *Brady* test, petitioner also fails to show that
15 disclosure of the statements would have had a "reasonable probability" of "produc[ing] a
16 different verdict." *Strickler*, 527 U.S. at 281. The state appellate court found that "what Baskin
17 told the prosecutor in the additional interviews was largely duplicative of the statements he
18 made in the prior recorded interviews that *were* timely disclosed to the defense" (Exh. 10 at 4)
19 (emphasis added). This finding, coupled with the inculpatory nature of the specific statements
20 discussed in petitioner's traverse, eliminates the likelihood that disclosure of Baskin's
21 statements would have created a reasonable probability of a different verdict. Thus, the state
22 appellate court's decision rejecting this claim was not contrary to, or an unreasonable
23 application of, clearly established federal law.

24 Consequently, petitioner is not entitled to habeas relief on his first claim.

25 **2.     Prosecutorial Misconduct**

26 Petitioner raises two separate claims of prosecutorial misconduct. Petitioner first claims
27 that the prosecution improperly vouched for the credibility of a witness. Second, petitioner
28 claims the prosecutor made improper statements during closing argument.

6

### a. Standard of Review

Claims of prosecutorial misconduct are cognizable in federal habeas corpus. The appropriate standard of review is the narrow one of due process and not the broad exercise of supervisory power. *See Darden v. Wainwright*, 477 U.S. 168, 181 (1986). A defendant's due process rights are violated when a prosecutor's misconduct renders a trial "fundamentally unfair." *See ibid.* Under *Darden*, the first issue is whether the prosecutor's remarks were improper; if so, the next question is whether such conduct infected the trial with unfairness. *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005). Prosecutorial misconduct is reviewed " 'on the merits, examining the entire proceedings to determine whether the prosecutor's remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Johnson v. Sublett*, 63 F.3d 926, 929 (9th Cir. 1995) (citation omitted).

### b. Improper Vouching for the Credibility of a Witness

Petitioner argues that the prosecutor elicited testimony from investigating officer Robert Nolan (Nolan) by having Nolan "testify at trial that the 'recorded' portions of Nolan's interview with Baskin represented the portions where Baskin was being truthful" (Pet. 12–13). The exchange that petitioner alleges constituted improper vouching occurred as follows:

> Q. [W]hy is it that you start your interview by not recording?
>
> A. Well, the primary reason is that, in general, people are very, very afraid and reluctant to speak about homicide cases. And I am attempting to develop whatever rapport I can to elicit statements and get to the truth. It is my belief that to tape record something right off the bat is even more intimidating to someone than simply talking to the police. . . .
>
> Q. Is this standard procedure?
>
> A. Yes. . . .
>
> Q. At what point do you decide it is okay to tape record an individual you are interviewing?
>
> A. Largely it is my discretion. I tape record when I either feel I am getting a completely truthful statement or as close to that as I can get in a case.

(Exh. 6B at 432–33). Petitioner admits and the state appellate court found that defense counsel

1 did not object to this line of questioning at trial (Exh. 10 at 6, Traverse 11). The state appellate
2 court found that the prosecutorial misconduct claim was therefore procedurally defaulted (Exh.
3 10 at 6). The court nonetheless went on to reject petitioner's claim on the merits (*ibid.*).
4 Specifically, the court found that "[t]he prosecutor never suggested that the jury should find
5 Baskin's recorded statement to be truthful based on Nolan's implied opinion" (*ibid.*).

6 Respondent contends that petitioner's claim of improper vouching is procedurally
7 defaulted on federal habeas review because it was not raised contemporaneously at trial (doc.
8 23-1 at 12–13). The Ninth Circuit has recognized and applied the California contemporaneous
9 objection rule in affirming denial of a federal petition on grounds of procedural default where
10 counsel failed to object in trial court. *Inthavong v. Lamarque*, 420 F.3d 1055, 1058 (9th Cir.
11 2005); *Paulino v. Castro*, 371 F.3d 1083, 1092–93 (9th Cir. 2004); *Vansickel v. White*, 166 F.3d
12 953, 957–58 (9th Cir. 1999). Respondent, therefore, is correct that these issues are procedurally
13 defaulted, and because petitioner has not shown cause and prejudice or a miscarriage of justice,
14 *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991), this claim is barred.

15 Even addressing the merits of the claim, however, Petitioner is not entitled to federal
16 habeas relief. The testimony elicited from Nolan was not improper vouching for the credibility
17 of a witness. Nolan explained that he chose to partially record Baskin's statements after a
18 period of unrecorded investigation because that is his normal course of practice. Thus, Nolan's
19 testimony was for the purpose of explaining why Nolan recorded only part of the conversation
20 with Baskin. Nolan did not state that Baskin's testimony should be believed, nor did the
21 prosecutor state that Baskin's recorded statements were truthful. Furthermore, after the short
22 three-answer-three-question exchange, the prosecutor moved on to a different topic.

23 The limited exchange between Nolan and the prosecutor, when viewed in the context of
24 the entire proceeding, did not "so infect[] the trial with unfairness as to make the resulting
25 conviction a denial of due process." *Johnson*, 63 F.3d at 929. Thus, the state court's rejection
26 of this claim was not "an unreasonable determination of the facts in light of the evidence
27 presented in the State court proceeding," nor was the state appellate court's decision "contrary
28 to, or an unreasonable application of, clearly established Federal law as determined by the

8

Supreme Court of the United States." 28 U.S.C. 2254(d).

### c. Improper Statements During Closing Argument

Petitioner's final federal claim is that the prosecutor made certain improper statements during closing argument. The statements are identified in petitioner's traverse (Traverse 14–16).

The first statement concerned testimony by petitioner's grandmother regarding the night Rankin came to her house threatening to kill petitioner. Specifically, petitioner's grandmother testified that she had spoken to an Officer Dob about this incident (Exh. 6D at 732–33). During closing argument, the prosecutor stated, "She knows there is no Officer Dob. There is no Officer Dob" (*id.* at 798). Defense counsel objected to this remark stating that evidence regarding the existence of Officer Dob was never introduced (*ibid.*). The trial court upheld the objection and gave a special instruction as follows:

> During the closing argument, the prosecutor stated there was no Officer Dobs employed by the Oakland Police Department. There was no evidence presented at the trial by the prosecutor on whether or not Officer Dobs is or ever was employed by the Oakland Police Department. You should disregard the Prosecutor's statement on this subject and not allow it to enter into your deliberations in any way.

(*id.* at 902).[1] Defense counsel found this instruction sufficient (*ibid.*).

Second, petitioner's traverse cites the following statement made by the prosecutor in arguing that petitioner had not accepted responsibility for his past crimes:

> Next, I want to talk about accepting responsibility. Even to this day Sam Gray refuses to accept responsibility for his past conduct. He says, ["]I didn't rob anybody.["] But he knows that the victim pointed him out in that robbery when he was younger. He knows that his two friends, Patrick and Arthur, said, ["]Yeah ok, Sam started punching him because the kid wouldn't give him his stuff.["]

(*id.* at 808). Defense counsel objected to these statements, asserting that there was no evidence of these facts (*ibid.*). The trial court upheld the objection and instructed the jury to disregard these comments because they were not supported by the evidence (*ibid.*). The trial court further instructed the jurors that "[s]tatements made by the attorneys during the trial are not evidence"

---

[1] "Officer Dob" and "Officer Dobs" are the same person, but there are inconsistencies in the spelling of his name in the trial transcript.

9

and to "not consider for any purpose . . . any evidence that was stricken by the court; treat it as though you had never heard of it" (*id.* at 871).

Third, petitioner's traverse points to the following statement made during the prosecution's closing argument:

> I have tried to make it as clear as possible. This is not a manslaughter. This is not a subjective standard. When it come to heat of passion, it has to be a heat of passion, the type of thing that is going to enrage somebody, enrage the honest, ordinary, law-abiding citizen. This is when heat of passion applies. You look at that and you say: ["]I can see how the honest, ordinary, normal citizen would get pissed off about that and react.["]

(*id.* at 865). Defense counsel objected on grounds that this was a misstatement of the law (*id.* at 865–66). The trial court sustained the objection (*id.* at 866). Later, the court properly defined heat of passion (*id.* at 889), and explained to the jury that "[i]f anything concerning the law said by the attorneys in their arguments, or at any other time during the trial, conflicts with my instructions on the law, you must follow my instructions" (*id.* at 870).

Finally, the traverse points to the following statement made by the prosecution during rebuttal argument:

> As jurors, you take an oath. You have a duty to reach a decision. Now every once in a while you get somebody who says, ["]You know, I know that is not about sympathy, the judge was really, really clear, the law is really, really clear, the DA was really clear this wasn't about sympathy, but I just can't do it, and I am not going to deliberate, I am not going to make up my mind.["] If somebody refuses to deliberate, you need to let us know. They are not abiding by their oath.

(*id.* at 866–67). Defense counsel objected, and the court admonished the prosecutor (*id.* at 867). After being admonished, the prosecutor once more stated, "Again, you take a duty to deliberate and you have to reach a decision in this case. The evidence is very, very clear" (*ibid.*). Defense counsel again objected (*ibid.*). After sustaining the second objection, the court explained that the jurors "don't have a duty to reach a decision in the case. They have a duty to reach a decision in the case if they are able to do so" (*ibid.*).

The first factor in determining whether misconduct amounted to a due process violation is whether the trial court issued a curative instruction to the jury. *See e.g.*, *U.S. v. de Cruz*, 82 F.3d 856, 862 (9th Cir. 1996); *U.S. v. Simtob*, 901 F.2d 799, 806 (9th Cir. 1990); *U.S. v. Polizzi*, 801 F.2d 1543, 1558 (9th Cir. 1986). When a curative instruction is issued, a court presumes

10

1  that the jury has disregarded the improper remarks and that no due process violation occurred.
2  *See Greer v. Miller*, 483 U.S. 756, 766, n.8 (1987).

Other factors which a court may take into account in determining whether misconduct rises to a due process violation are: (1) the weight of evidence of guilt, *compare United States v. Young*, 470 U.S. 1, 19 (1985) (finding "overwhelming" evidence of guilt) *with United States v. Schuler*, 813 F.2d 978, 982 (9th Cir. 1987) (in light of prior hung jury and lack of curative instruction, new trial required after prosecutor's reference to defendant's courtroom demeanor); (2) whether the misconduct was isolated or part of an ongoing pattern, *see Lincoln v. Sunn*, 807 F.2d 805, 809 (9th Cir.1987) ("courts will not reverse when the prosecutorial comment is a single, isolated incident, does not stress an inference of guilt from silence as a basis of conviction, and is followed by curative instructions"); and (3) whether the misconduct relates to a critical part of the case, *see Giglio v. United States*, 405 U.S. 150, 154 (1972) (failure to disclose information showing potential bias of witness especially significant because government's case rested on credibility of that witness).

Here, the trial court provided curative instructions for each improper statement. As described above, the trial court sustained each of defense counsel's objections to the four improper statements. Furthermore, the trial court either contemporaneously identified the error and provided clarification, as in the case of the prosecutor's statements regarding the jurors' duty, or the court explained when reading the jury instructions what evidence was properly before the jurors and the legal standards they were charged with applying to the case. This strongly weighs against petitioner's claim that his right to due process was violated.

The other factors similarly weigh against finding a due process violation in this case. Petitioner argued imperfect self-defense at trial. However, as the state appellate court observed, petitioner "admitted he deliberately and stealthily shot Rankin in the back of the head, without fear of immediate harm to himself" (Exh. 10 at 9 and Exh. 6C at 610–11, 633–34, 702–06). Furthermore, "Baskin's recorded statements confirmed that [petitioner] threatened to kill Rankin several times, and ultimately shot him because of an argument and not in self defense" (Exh. 10 at 9 and Exh. 2 at 2–3, 8–10). These facts provide ample evidence to defeat

1 petitioner's self-defense claim. Accordingly, the evidence in the record supporting petitioner's
2 guilt weighs against petitioner.

3 The next factor — whether the misconduct was part of an ongoing pattern — is neutral.
4 While four improper statements is neither an especially high nor an especially low number,
5 when coupled with the fact that the prosecution repeated one of the statements after specifically
6 being admonished, and when also coupled with the prosecution's earlier failure to disclose
7 Baskin's complete testimony, a pattern of misconduct could be found. This order notes,
8 however, that the improper comments were isolated to closing argument. Additionally, a
9 review of the record shows that, over the course of petitioner's trial, the prosecution properly
10 introduced evidence of petitioner's guilt.

11 Finally, three of the prosecutor's improper statements concerned issues that were not
12 critical to the case. The existence of Officer Dob, petitioner's previous crime, and the jurors'
13 duty to reach a decision did not affect core issues in the case. However, the prosecutor's
14 statement regarding the legal standard on heat of passion did concern a critical portion of the
15 case. Nevertheless, the jury was instructed to disregard any statement of law that conflicted
16 with the standards set forth by the court. Thus, this factor is also neutral.

17 In sum, the trial court corrected every instance of an improper statement made by the
18 prosecution, and, on balance, the other factors weigh against petitioner. According the state
19 court's determination the high degree of deference to which it is entitled under 28 U.S.C.
20 2254(d), the prosecutor's statements did not violate due process. Consequently, petitioner is
21 not entitled to federal habeas relief on his prosecutorial misconduct claims.

22 //
23 //
24 //
25 //
26 //
27 //
28 //

//

**CONCLUSION**

The petition for a writ of habeas corpus is **DENIED**.

Rule 11(a) of the Rules Governing Section 2254 Cases now requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the petition is denied. Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find this court's denial of his claim debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Consequently, no certificate of appealability is warranted in this case.

The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: March  22  , 2011.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

13